WILLIAM V. STATON, Plaintiff-Appellant, *v.* AMAX COAL COMPANY, Defendant-Appellee.

Third District   No. 3—83—0506

Opinion filed March 14, 1984.

Daniel P. Nagan, of Barash, Stoerzbach & Henson, P.C., of Galesburg, for appellant.

Martin J. Klaper and Byron L. Meyers, both of Ice, Miller, Donadio & Ryan, of Indianapolis, Indiana, and Ralph Froehling, of Froehling, Taylor & Weber, of Canton, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

William V. Staton, the plaintiff-appellant, was employed as a maintenance manager for Amax Coal Company, the defendant-appellee. Staton had no employment contract with the defendant; he was an at-will employee. Staton was involuntarily terminated by Amax and filed suit seeking payment of termination pay pursuant to an Organization and Policy Guide issued by Amax. The Guide did not apply to "discharge for cause." The trial court granted Amax' motion for summary judgment based upon its findings that there was no genuine issue as to any material fact and that Staton was discharged for cause as a matter of law and, therefore, not entitled to termination pay. It is from that judgment that Staton appeals. We reverse.

The sole issue on appeal is whether there is a genuine issue of material fact as to the existence of reasonable or good cause for Amax' discharge of Staton.

The underlying facts of this case for the purpose of this appeal are not in dispute. We relate the facts here as they were set forth by the trial court in its memorandum opinion. Amax is in the business of surface coal mining in the State of Illinois and in other States. Staton was hired by Amax on September 24, 1969, and worked for Amax until his discharge on June 3, 1982. During his 13 years of employment, Staton progressed from the position of welder to the position of maintenance manager.

The events leading to Staton's discharge began on the morning of May 28, 1982, when Staton instructed an Amax employee to go to a nearby town using a company vehicle and pick up a keg of beer. The employee returned with a keg of beer and placed it in a company owned vehicle used by Staton. Later, the keg of beer was stored in the defendant's welding shop. During the afternoon of May 28, 1982, Staton obtained explosives and igniting devices belong to Amax and took

them to a lake owned by Amax. By approximately 4 p.m., a group of people consisting of Amax management and union employees, private citizens, and at least one minor child had gathered at the lake. The group was at the lake for a party, unrelated to the defendant's business, that had been planned for the purpose of obtaining fish for a charitable fish fry. Many persons including Staton consumed alcoholic beverages on the defendant's property. Staton personally detonated some of the explosives for the purpose of stunning or killing the fish in the lake near where the party was held. While the party was in progress Staton instructed an on-duty employee to get additional explosives. Further explosives were obtained and detonated at the lake.

On June 2, 1982, officials of Amax advised Staton that he could either resign or he would be terminated because of the events occurring on May 28, 1982. Staton refused to resign and was involuntarily terminated on June 3, 1982. In his suit Staton alleged that his discharge was not for "cause" within the meaning of Amax' Organization and Policy Guide and that he was entitled to termination pay. Staton alleged that pursuant to the termination pay schedule Amax owed him the amount of $26,405.82, plus interest from the date of discharge. Amax refused to give Staton the termination pay.

On appeal, Staton admits that because of his conduct Amax was justified in taking some disciplinary action against him. But, Staton contends that a genuine issue of fact exists as to whether Amax had cause to discharge him rather than disciplining him in another less severe way. Amax contends that the determinative issue on appeal is the meaning and intention of the language of its Organization and Policy Guide, not whether Staton's undisputed conduct warranted a particular level of discipline. Amax maintains that the purpose of the policy is simply to distinguish between cases where employees lose their jobs because of reasons beyond their control and cases where employees lose their jobs because of their own acts of misconduct.

Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) The aim of summary judgment is not to try issues but to determine whether any triable issues exist. In ruling on a motion for summary judgment, the trial court should construe the pleadings, affidavits, exhibits and depositions most strictly against the moving party and most liberally in favor of the opponent. Inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts, then

a triable issue exists. (*In re Estate of Kietrys* (1982), 104 Ill. App. 3d 269, 273, 432 N.E.2d 930, 933.) Summary judgment should be granted only when the legal and factual right to it is clear and free from doubt. *Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055, 374 N.E.2d 1302, 1304.

Amax and Staton agree that, for purposes of appeal only, this action is governed by Amax' Organization and Policy Guide. Thus, we need not determine whether the Guide was in fact a binding contract or merely a guideline or policy. The Guide set forth a program of termination pay based upon an employee's length of service. Section 2.1 provided that termination pay would not be awarded if termination resulted from "discharge for cause." The Guide did not define the phrase "discharge for cause" or set forth what activity or conduct would constitute "cause" for discharge.

The sole question to be resolved, therefore, is whether there was a genuine issue of material fact as to the existence of "cause" for the discharge of Staton by Amax. The resolution of this question requires that we define the term "for cause." We start with the assumption that the phrase "discharge for cause" means discharge for reasonable, just, or good cause, not discharge for any cause or discharge for bad cause.

■ Generally, the burden is on the employer to prove that the employee was guilty of conduct justifying termination. Thus, it is a question of fact, to be determined by the trier of fact, whether an employee has been discharged for good cause. (*Lukasik v. Riddell, Inc.* (1983), 116 Ill. App. 3d 339, 346, 452 N.E.2d 55, 59-60.) Neither party has cited any Illinois appellate case law defining the term "cause" for purposes of discharge from employment of a nonpublic, at-will employee. This is likely due to the general rule that an employee "at will" may be terminated for any reason. (53 Am. Jur. 2d *Master and Servant* sec. 43 (1970).) However, cases involving arbitration under collective bargaining agreements and cases involving statutory protection for public employees are helpful because they have developed rules and principles governing discipline and discharge of employees.

In cases involving arbitration under collective bargaining agreements, arbitrators have interpreted cause to mean some cause not arbitrary or capricious. (*Fries v. Pennsylvania R.R. Co.* (7th Cir. 1952), 195 F.2d 445, 448.) "Just cause" includes only conduct that an employee knows is subject to discipline. While an employer has the right to create rules, they must be made known to employees and employees must reasonably believe that they will be enforced. Employees who have engaged in similar conduct must be subject to similar discipline. Even when an offense is undisputed, an employee may not be singled

out and punished as an example to others. The burden rests on the employer to prove, by at least a preponderance of the evidence, that the employee should be discharged. Summers, *Individual Protection Against Unjust Dismissal: Time For A Statute*, 62 Va. L. Rev. 481 (1976).

In cases involving statutory protection for public employees, "cause" has been defined as a substantial shortcoming which renders the employee's continuance in his position in some way detrimental to the discipline and efficiency of the employer and which the law and sound public policy recognize as good cause for no longer holding the position. *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 30, 370 N.E.2d 511, 513.

We next apply the above principles to the facts in this case. On the one hand Staton maintains that: the fishing party occurred on a Friday evening after he had finished work; Amax did not have a clear policy defining "cause" or listing acts of misconduct and appropriate forms of discipline; Amax had used graduated or progressive discipline in the past; there is evidence of prior unauthorized use of explosives by employees for "shooting fish"; and other employees involved in the party to a similar extent as Staton were not disciplined in a similar manner. On the other hand Amax maintains that, as a high level management employee, Staton's misconduct set a bad example for those he supervised. Amax further maintains that detonation of the explosives by Staton exposed Amax to substantial risk of liability to the persons at the party and that its reputation was damaged by adverse publicity resulting from the incident.

■ After applying the above principles to the facts in this case, we believe that a genuine issue of material fact exists as to whether Amax discharged Staton for reasonable or good cause. While the facts surrounding Staton's conduct on May 28, 1982, are not in dispute, fairminded persons could draw different inferences from these facts. Therefore a triable issue exists. However, we do not decide on appeal whether in fact Amax did or did not discharge Staton for reasonable or good cause.

For the foregoing reasons, the judgment of the circuit court of Fulton County granting the defendant's motion for summary judgment is reversed.

Reversed.

ALLOY, P.J., and SCOTT, J., concur.