INTERSTATE MATERIAL CORPORATION, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—4093

Opinion filed June 15, 1995.

Cook Partners Law Offices, Ltd., of Chicago (Rufus Cook and Barbara J. Revak, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, D.R. Edwards, and Douglas McMillan, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE SHEILA O'BRIEN delivered the opinion of the court:

Plaintiff, Interstate Material Corporation, a company that manufactures ready-mix concrete and supplies building materials, filed a four-count complaint against the City of Chicago (City) because the City denied Interstate's request for minority business enterprise (MBE) recertification. Counts I, III, and IV alleged the City deprived Interstate of procedural due process. Count II alleged the City racially discriminated against Interstate. Following a bench trial, the court found in favor of the City on all counts. Interstate appeals, and we affirm.

The City established an MBE program to ensure businesses owned and controlled by minorities an increased opportunity to compete for contracts financed in whole or in part with United States Department of Transportation (USDOT) funds. USDOT regulations require each business requesting certification as an MBE to fill out an application (Schedule A) with information proving it is a "small business concern" and at least 51% owned and controlled by one or more minorities or women. (49 C.F.R. § 23.5 (1985).) Once certified, an MBE must update its submission annually by completing a new Schedule A or certifying that the Schedule A on file is still accurate. 49 C.F.R. § 23.53 (1985).

In 1983, Interstate applied to the City to be certified as an MBE. On March 19, 1984, the City certified Interstate as an MBE "concrete supplier" and informed Interstate its certification would be reviewed annually. As of March 19, 1985, Interstate had not applied for recertification nor had it been recertified. On July 2, 1985, a City official informed Interstate it must apply immediately for recertification as an MBE in light of executive order 85—2, which had been issued by Mayor Harold Washington in April 1985. That order provided

for the appointment of a contract compliance officer to "investigate the status of certified MBEs *** to determine whether they should retain certification." (City of Chicago Executive Order 85—2, § 5(f) (April 3, 1985).) Interstate submitted its Schedule A on July 15, 1985. On July 19, 1985, the City denied Interstate recertification. After Interstate requested the City to reconsider its position, the City again denied Interstate recertification on August 2, 1985.

On October 3, 1985, Interstate filed a four-count complaint alleging the City violated Interstate's right to procedural due process and racially discriminated against it by denying Interstate's request for recertification. On October 8, 1985, Interstate filed a motion for a preliminary injunction to prevent the City from denying it recertification. The trial court denied Interstate's motion. On appeal, we reversed and remanded with directions that the trial court enter an order for the preliminary injunctive relief sought by Interstate. (See *Interstate Material Corp. v. City of Chicago* (1986), 150 Ill. App. 3d 944, 501 N.E.2d 910.) Later, the trial court held a bench trial on Interstate's complaint and ruled in favor of the City. Interstate filed this timely appeal.

Interstate argues we should reverse the trial court's judgment on all four counts. A reviewing court will not reverse a judgment following a bench trial unless it is against the manifest weight of the evidence, meaning the opposite conclusion is clearly evident. *Hewitt v. Hurwitz* (1992), 227 Ill. App. 3d 616, 620, 592 N.E.2d 213, 215-16.

■ First, we address the trial court's judgment for the City on counts I, III, and IV. Those counts alleged the City's MBE recertification procedures denied Interstate procedural due process. In order to establish a procedural due process violation, Interstate must show (1) it has a constitutionally protected property or liberty interest and (2) it was deprived of that interest without due process of law. *Cornelius v. LaCroix* (7th Cir. 1988), 838 F.2d 207, 210.

Interstate contends it has a property interest in its recertification as an MBE. We disagree. The United States Supreme Court has stated:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. ***
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those

benefits." *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.

■ Any right of Interstate to recertification as an MBE stems from the USDOT regulations that the City followed in establishing its MBE program. The USDOT regulations and the MBE program implemented by the City provide that an MBE is certified for one year. (See 49 C.F.R. § 23.53(f)(1985).) Although an MBE may apply for recertification for another one-year period, neither the USDOT regulations nor the City's MBE program entitles an MBE to automatic recertification after its initial one-year certification period expires. Interstate's one-year MBE certification period ended on March 19, 1985, after which Interstate applied for recertification. Although Interstate may have expected to be recertified, it had no legitimate claim of entitlement, or property interest, in a future certification as an MBE.

*Baja Contractors, Inc. v. City of Chicago* (7th Cir. 1987), 830 F.2d 667, cited by Interstate, does not support Interstate's claim as it differs factually from this case. The City certified Baja as an MBE on February 28, 1985, and rescinded that certification approximately six months later on September 9, 1985. The court held Baja had established a likelihood of showing a legitimate claim of entitlement to continued certification for the remainder of the one-year certification period and granted its request for a preliminary injunction. (*Baja*, 830 F.2d at 676-77.) *Baja* provides no support for Interstate's argument that an MBE has an entitlement to recertification *after* its one-year certification period has ended.

We find support for our holding in *Cornelius v. LaCroix* (7th Cir. 1988), 838 F.2d 207. The defendant in *Cornelius*, the Milwaukee Metropolitan Sewerage District (the District), established an MBE policy in 1978. Prior to 1982, the District certified businesses, including Cornelius, as MBEs on a "contract by contract" basis. (*Cornelius*, 838 F.2d at 211.) In 1982, the District revised its MBE policy and required an extensive new certification process. In 1983, the District denied Cornelius certification. *Cornelius*, 838 F.2d at 209.

Cornelius brought an action alleging the District had deprived it of property without due process of law. The jury found for Cornelius on the due process claim, and the District appealed the denial of its motion for judgment notwithstanding the verdict. (*Cornelius*, 838 F.2d at 209-10.) The court reversed, holding Cornelius' prior certification on a contract-by-contract basis did not create an entitlement to future certification and therefore Cornelius had no protectible property interest in continued MBE status. (*Cornelius*, 838 F.2d at 211.) Similarly, Interstate's certification as an MBE for a set one-year pe-

riod did not create an entitlement to future certification after that period. Without a legitimate claim of entitlement to recertification as an MBE, Interstate has no protectible property interest and therefore its due process claims must fail. The trial court's judgment for the City on counts I, III, and IV was not against the manifest weight of the evidence.

■ Next, we address the trial court's judgment for the City on count II, which alleged the City engaged in racial discrimination when denying Interstate's request for recertification. The City's MBE program is designed to give minorities an increased opportunity to compete for City contracts. Accordingly, the City sets aside a certain percentage of the annual dollar value of all City contracts to qualified MBEs. By refusing to recertify Interstate as an MBE, the City denied Interstate future preferences under the set-aside program. The failure to give a racial preference under a "set-aside" program cannot be the basis of a claim that the City is engaging in discrimination. (See *Szabo Food Service, Inc. v. Canteen Corp.* (7th Cir. 1987), 823 F.2d 1073.) The trial court's judgment for the City on count II was not against the manifest weight of the evidence.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.